IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM R. J., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:21-cv-735-BN | |
| § | | |
| KILOLO KIJAKAZI, Acting § | | |
| Commissioner of Social Security, § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION

Plaintiff William R. J. seeks judicial review of an adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

## Background

Plaintiff alleges disability due to lumbar spine degenerative disease, thoracic spine and right shoulder degenerative disc disease, lumbar spine scoliosis, cataracts, a hernia post-status repair, hypertension, depression, and an intellectual disorder occurring since October 3, 2016, the alleged date of onset. *See* Dkt. No. 27 at 2. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See* Dkt. No. 18-1 at 14. That hearing was held on October 11, 2019. *See id.* At the time of the hearing Plaintiff was 58 years old. *See id.* He has a high school education and past work experience as a casher/checker, store laborer, and retail sales clerk. *See* Dkt. No 27 at 2. He has not engaged in substantial gainful activity since October 3, 2016. *See* Dkt. No. 18-1 at 16.

On September 30, 2020, the ALJ issued an unfavorable decision regarding Plaintiff's application for benefits, applying the five-step sequential analysis. *See id.* at 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *See id.* At step two, the ALJ found that the medical evidence established Plaintiff suffered from medically determinable and severe impairment due to lumbar spine degenerative disc disease, right eye cataract, and depression. *See id.* at 16. The ALJ further found that Plaintiff's thoracic and right shoulder degenerative joint disease, lumbar spine scoliosis, hypertension, hyperlipidemia, and hernia post-status repair, while medically determinable were non-severe. *See id.* at 17. At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal any impairment listed in the social security regulations. *See id.*

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(a)," including that he can lift or carry 20 pounds occasionally and 10 pounds frequently; walk or stand for six hours of an eight-hour workday; sit for six hours of an eight-hour workday; never climb ladders, ropes, or scaffolds, but occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never work around dangerous machinery or around unprotected heights; and that he can understand, remember, and carry out detailed but not complex instructions; and perform jobs that do not require operation of motor vehicles or depth perception. *Id.* at 18.

Relying on the vocational expert's ("VE") testimony, the ALJ found at step four that Plaintiff was capable of performing his past relevant work as a cashier checker "as it is actually and generally performed" and thus was not disabled from October 3, 2016, through the date of the decision. *See id.*

Plaintiff appealed the decision to the Appeals Council, which denied his request for review. *See* Dkt. No. 27 at 2.

Plaintiff then filed this action in federal district court, challenging the hearing decision on the grounds that the ALJ's RFC finding is not supported by substantial evidence. *See* Dkt. No. 1.

**Legal Standard**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence

or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to

show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence

5

might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ ignored the only medical evidence indicating the impact of Plaintiff's mental limitations on his ability to work and instead substituted her lay judgment in determining Plaintiff's RFC.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record," *Gonzales v. Colvin*, No. 3:15-cv-685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (citing 20 C.F.R. § 404.1545(a)(1)), and "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly," *Fontenot*, 661 F. App'x at 277 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

"Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557 (citing 20 C.F.R. § 404.1513(b)(6)). "[W]here no medical statement has been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is

6

supported by substantial evidence in the existing record." *Id.*; *accord Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citation omitted).

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence because, after finding at step two that Plaintiff had mild limitations in interacting with others, she improperly failed to include any social functioning limitations in Plaintiff's mental RFC. *See* Dkt. No. 27 at 11-12. The Commissioner contends that the ALJ properly considered the evidence of record in assessing Plaintiff's capacity to work and argues that the ALJ was not required to include a specific limitation related to interacting with people in Plaintiff's RFC. *See* Dkt. No. 30 at 5.

In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those not labeled severe at step two. 20 C.F.R. §§ 416.945(a)(2), 416.920(e) (2016); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. And where the claimant suffers from mental impairments, the ALJ's RFC analysis must consider the ability to understand, carry out, and remember instructions, and to respond appropriately to supervision, co-workers, and work pressures in a work setting. *See* Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *3-*4 (2016) (RFC must incorporate factors listed in 20 C.F.R. §§ 404.1545(c), 416.945(c)); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (holding that Soc. Sec. Rul. 96-8p provides guidance to the district courts).

But as the ALJ explains in her decision,

the limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of

7

> mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

Dkt. 18-1 at 18. A claimant's mental RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to work, despite his impairments. And it does not necessarily follow that finding a claimant has some limitations in one area of mental functioning will mean that his ability to perform past relevant work is limited. *See Boyd v. Apnel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that Boyd had 'a combination of impairments that is severe' did not foreclose a finding that Boyd had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding.").

The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *See Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). Nor is an ALJ required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). And, while "the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments," there is "no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis." *Fraga v. Bowen*, 810 F.2d 1296,

8

1305 (5th Cir. 1987) (citation and quotation marks omitted); *Martha L. v. Saul*, No. 1:20-cv-3-H-BU, 2021 WL 3610316 (N.D. Tex. July 27, 2021); *see, e.g., Gonzales v. Colvin*, No. 3:15-cv-0685-D, 2016 WL 107843, at *6, *8 (N.D. Tex. Jan. 11, 2016) (holding that "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments); *Danny R. C. v. Berryhill*, No. 3:17-cv-1682-BH, 2018 WL 4409795, at *15-*16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis").

Nonetheless, although an ALJ may weigh medical evidence in the record and make credibility decisions regarding the conclusions of medical experts, the ALJ "is not qualified to interpret raw medical data in functional terms; if an ALJ reaches conclusions as to a claimant's [] exertional capacity without a physician's assessment or in contradiction of a physician's medical assessment, then the decision is not supported by substantial evidence." *Melvin v. Astrue*, No. 1:08-cv-264-SAA, 2010 WL 908495, at *4 (N.D. Miss. Mar. 9, 2010). "Consequently, when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, No. EP-17-cv-00263-ATB, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018).

Here, the ALJ effectively rejected the only medical opinion from an examining physician that assessed the extent of Plaintiff's mental impairments on his ability to work. That evaluation, submitted by consultive examiner Ashley Gartner, Psy.D., reported that Plaintiff had severe recurring major depressive disorder and found that he has "significant difficulty related to remembering and comprehending complex instructions" and "significant deficits related to persisting in work-related activity at a reasonable pace;" "maintaining effective social interaction with supervisors, coworker and the public;" and "coping with normal levels of stress in a work environment." *See* Dkt. No. 18-1 at 413-14. Dr. Gartner further opined that "[Plaintiff's] prognosis is guarded. His symptoms are chronic and are likely to persist" and will "continue to hinder his functioning in social and occupational contexts." *Id*. at 413.

While the ALJ stated in her hearing decision that she found Dr. Gartner's opinion "somewhat persuasive," she noted the opinion was solely "based on Plaintiff's reports" and that "other medical evidence of record notes intermittent reports of depression and lack of consistent treatment," and "there is no inpatient or specialized mental health treatment in [the] record." *Id*. at 22. The ALJ subsequently determined Plaintiff's mental RFC included the sole limitation that he "can understand, remember, and carry out detailed but not complex instructions." *Id*. at 18.

Evidenced by the fact that the RFC includes none of the social functioning limitations identified by Dr. Gartner, the Court surmises that the ALJ rejected this portion of the opinion, finding it not persuasive. But the ALJ neither provides an

10

explanation for why she found Dr. Gartner's findings on Plaintiff's social functioning limitations not persuasive, nor does she point to other medical evidence or opinion in the record as support for her conclusion that Plaintiff has the mental RFC stated in the decision.

As noted above, the ALJ found at step two that Plaintiff suffered from a severe mental impairment and assessed at step three that Plaintiff had mild limitations in interacting with others, noting Plaintiff's self-reports that he "tended to isolate himself but spent time with his wife and he had only one friend that he talked to on the phone with." Dkt. No. 18-1 at 17. The ALJ also noted Plaintiff's self-reports that "he got along with his immediate family but not with his wife's family due to perceived bullying by them" and that he "had difficulty getting along with supervisors, especially if they got very bossy." *Id.*

The ALJ then discussed the various medical evidence in the record, including Plaintiff's January 14, 2019, psychological consultive examination with Dr. Gartner, as well as various medical visits and physical examinations during which physicians diagnosed Plaintiff with "recurrent major depressive disorder" but reported that Plaintiff's "mood and affect were normal;" [h]is behavior was normal; and "thought content was normal." *Id.* at 19, 21. The ALJ stated she found the "State Agency medical constants' opinions [] partially persuasive," but only discussed the SAMCs' findings as to Plaintiff's physical exertional limitations, providing no discussion or explanation of to what extent she found their findings regarding Plaintiff's mental functional limitations persuasive. *Id.* at 22. The ALJ then pointed to state agency

medical consultant Marvin Blasé, M.D.'s medical evaluation on May 29, 2019. Dr. Blasé reviewed Plaintiff's record and noted that Dr. Gartner's assessment of Plaintiff's mental health and degree of functional limitations was an outlier. *See id.* at 21. Medical examinations and evaluations prior to and after Dr. Gartner's examination had "cited no mental issues and the claimant had good mental status exam[s] being unremarkable." *Id.* "Furthermore, the claimant had not been referred for mental health treatment and had not presented any acute/crisis state necessitating mental health intervention…. The claimant remained on a simple mental health medication on an unchanged dosage of Prozac. Overall, the claimant appeared to have sufficient evidence of record to negate the one time mental health consultive exam and support the DDS mental functional capacities." *Id.*

Based on this remaining record evidence, the ALJ found that Plaintiff could lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours out of an 8-hour work day and sit for 6 hours out of an 8-hour work day; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; understand, remember, carry out detailed by not complex instructions; must avoid hazards such a unprotected heights and dangerous moving mechanical parts; can performs jobs that do not require operation of a motor vehicle as part of the job duties; and cannot perform jobs that require depth perception, *Id.* at 18.

But without Dr. Gartner's opinion, "the record does not clearly establish … the effect [Plaintiff]'s condition had on his ability to work." *Ripley*, 67 F.3d at 557. None

12

of the reports from Plaintiff's various medical visits and physical examinations indicate the effect Plaintiff's depression has on his mental functioning. While they may (and evidently did) provide a basis for the ALJ to conclude that Plaintiff's "subjective reports of mental health symptoms reflect a greater intensity and degree of symptoms than reflected by the objective medical evidence," they offer no evidence of the impact Plaintiff's mental health impairments on which the ALJ could rely in determining Plaintiff's mental RFC.

The only other record evidence evaluating Plaintiff's mental RFC comes from the SAMC reports, which include conclusions made by consultants who neither treated nor examined Plaintiff. Moreover, those reports, despite concluding that Plaintiff was "able to understand, remember, and carry out detailed instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes," appear to offer some support to Plaintiff's contention that he has social functioning limitations, as the SAMCs both reported that Plaintiff was moderately limited in his ability to "complete a normal workday … without interruptions from psychologically based symptoms;" "accept instructions and respond appropriately to criticism from supervisors;" "get along with coworkers or peers without distracting them or exhibiting behavioral extremes;" "maintain socially appropriate behavior;" and "respond appropriately to changes in the work setting." Dkt. No. 18-1, Ex. 1A at 75.

As noted above, the ALJ provides no discussion of Plaintiff's mental functioning impairments and no explanation for how she reached the mental RFC.

Nor does she indicate why, despite finding Dr. Gartner's opinion "somewhat persuasive," she adopted some but not all of the mental functional limitations found by Dr. Gartner. "[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor*, 706 F.3d at 602-03. And, "[a]n ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Dkt. No. 19 at 6 (citing *Martinez v. Chater*, 64 F. 3d 172, 176 (5th Cir. 1995)). But when determining a claimant's RFC, the ALJ is not permitted to "draw [her] own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003) (noting "[c]ommon sense can mislead" and "lay intuitions about medical phenomena are often wrong"). The ALJ may not, as she appears to have done here, "'substitute her lay opinion for the uncontroverted medical opinion of the only physician who opined concerning the effects' of the claimant's impairments." *Lasher v. Berryhill*, No. A-17-cv-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept. 21, 2018) (quoting Garcia, 2018 WL 1513688, at *2).

Because the ALJ appears to reject the findings of the only examining mental health expert and points to no other objective medical evidence in the record supporting her RFC determination, and because the Court does not find that objective medical evidence supporting the mental RFC otherwise exists in the record, the Court concludes the ALJ's RFC determination is not supported by substantial evidence.

**Conclusion**

For the reasons explained above, the hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: August 9, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE